2020 IL App (1st) 190436-U

FIFTH DIVISION
December 31, 2020

No. 1-19-0436

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of |
| | ) | Cook County. |
| Respondent-Appellee, | ) | |
| | ) | |
| v. | ) | No. 10 CR 7067 |
| | ) | |
| DEMARCUS JAYNES, | ) | Honorable |
| | ) | William Raines, |
| Petitioner-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE DELORT delivered the judgment of the court.
Justices Cunningham and Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held:* The claims alleged in the petitioner's successive postconviction petition are barred by the doctrine of *res judicata*. Even if the petition had not been barred by *res judicata*, it still failed to establish a substantial showing of a constitutional violation. We affirm the dismissal of petitioner's second-stage postconviction petition.

¶ 2    Petitioner Demarcus Jaynes appeals the second-stage dismissal of his supplemental postconviction petition, which sought to vacate his guilty plea to aggravated battery with a firearm. The State charged him with attempt first degree murder, armed robbery, aggravated battery with a firearm, and aggravated unlawful use of a weapon, stemming from the shooting and armed robbery of the victim. The parties reached an agreement subject to the circuit court's approval that, in

exchange for petitioner's guilty plea to one count of aggravated battery with a firearm, he would be sentenced to 23 years' imprisonment. The court admonished petitioner that he would have to serve 85% of the sentence, and he stated in response that he understood. In this appeal, petitioner argues the court erred in dismissing his supplemental postconviction petition because it made a substantial showing that trial counsel provided ineffective assistance by erroneously advising him that he would only have to serve 50% of his sentence. We affirm the ruling dismissing the supplemental postconviction petition at the second stage.

¶ 3                                     BACKGROUND

¶ 4     During a January 19, 2012 hearing, the parties informed the circuit court of the agreement that in exchange for petitioner's guilty plea to one count of aggravated battery with a firearm, he would be sentenced to 23 years' imprisonment. The court stated, "And that's to be served at 85 percent. Do you understand that, Mr. Jaynes?" Petitioner replied, "Yes, sir."

¶ 5     Next, the circuit court admonished petitioner regarding the nature of the charge against him; his right to plead not guilty and have a trial before a judge or jury, his understanding of what a jury trial entails, his waiver of his right to a jury trial; foregoing his right to see and hear witnesses testify against him and cross-examine those witnesses, present evidence, and requiring the State to prove him guilty beyond a reasonable doubt. Further, the court asked petitioner whether he understood that "on this charge I can sentence you from 6 to 30 years in the Illinois Department of Corrections," with an additional three years of mandatory supervised release after his release from the penitentiary. Petitioner replied that he understood. The, the court then asked him, for a second time, "do you understand that this is to be served at 85 percent; do you understand that?" Petitioner responded, "Yes, sir." Petitioner agreed that no threats or promises induced the guilty plea and that he was pleading guilty of his own free will.

¶ 6    The State informed the circuit court of the factual basis of the case, stating that the evidence would show on November 8, 2009, the victim and a friend were walking in an alley behind 3453 North Jannsen Avenue in Chicago. Petitioner, who was identified by the victim and the witness, approached them, produced a handgun, and demanded money. A struggle ensued for the handgun. Petitioner regained control of the gun and shot the victim twice in the abdomen. The victim ran from petitioner, who chased after him. After petitioner pointed his gun at the victim's head, the victim relinquished his wallet. The State also would present evidence that, where the struggle occurred, petitioner left a baseball hat and a tube of lip balm. The police recovered the items, inventoried them, and sent them to the Illinois State Police Crime Laboratory for testing and analysis. The results of the analysis showed petitioner's DNA on both the hat and the lip balm. Also, petitioner stipulated that both the victim and witness positively identified him as the offender in a lineup.

¶ 7    Petitioner waived his right to a pre-sentence investigation and the parties rested on that agreement. The circuit court asked petitioner if he had anything to say before the sentence was imposed. Petitioner declined and the court stated, "23 years is a stiff penalty, but in many respects you're lucky because if the victim had died you would be looking at life in prison." Petitioner responded, "Yes, sir." The court then stated, "At least now you have a chance to serve your time and still have some life on the outside when you get out. Anything else you want to say?" Petitioner replied, "No, sir." The court entered its finding on the plea agreement and sentenced petitioner to 23 years' imprisonment.

¶ 8    The circuit court also admonished petitioner of his right to appeal, stating that he "must first file within 30 days in this court a written motion asking the Court to vacate the judgment entered here today and asking for leave to withdraw your guilty plea setting forth in writing the

grounds for that motion." The court explained that if the motion were allowed, the judgment and sentence would be vacated, a trial date would be set, and that he would defend all the charges against him with the possible imposition of an enhanced penalty. In response to this admonishment, petitioner stated that he understood. The court asked petitioner whether "there is anything about the proceeding you do not understand?" Petitioner stated, "No, sir." Then the court asked, "Are you satisfied with the representation you received?" He replied, "Yes, I am."

¶ 9 In February 2012, petitioner sent a *pro se* letter to the court indicating that he wanted to preserve his right to appeal. Petitioner appeared with counsel at a March 14, 2012 hearing and the court stated that he could not appeal his conviction without first filing a written motion to withdraw his guilty plea. After consulting with his attorney, petitioner affirmed in open court that he did not wish to withdraw his plea, and his notice of appeal was withdrawn.

¶ 10 On May 3, 2012, petitioner filed a *pro se* motion to reduce sentence and alternatively petitioned for writ of *mandamus* to order strict compliance with the terms of the guilty plea agreement. He argued that his sentence was an improper extended term sentence and that his conviction and sentence violated the one-act, one-crime rule. He also argued that plea counsel was ineffective for "failing to ask the court to [c]onsider the lesser-included offense in his Plea Agreement." The pleadings did not allege that counsel advised him that he would need to serve only 50% of his sentence before he entered into the plea agreement.

¶ 11 The circuit court denied petitioner's motion on June 22, 2012. In a written order, the court found that his motion was untimely, because it was filed more than 30 days after the sentence was imposed. The court found that the sentence was not an extended term and that, instead, petitioner pleaded guilty to aggravated battery with a firearm, which is a Class X offense punishable by a term ranging from 6 to 30 years. His 23-year sentence fell within that range and did not exceed the

statutory maximum. The court also rejected petitioner's argument that the sentence violated the one-act, one-crime rule, because he pleaded guilty to a single count of shooting and causing injury to the victim.

¶ 12     Petitioner appealed the denial of his *pro se* motion to reduce sentence. Appointed counsel filed a motion to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), and petitioner filed a *pro se* response, claiming that his sentence was an improper extended term sentence and that his conviction and sentence violated the one-act, one-crime rule.

¶ 13     In a September 23, 2013 summary order, this court found there were no issues of arguable merit to be raised in an appeal because the sentence imposed was not an extended term and petitioner pleaded guilty to one count and received one conviction, which comported with the one-act, one-crime rule. See *People v. Jaynes*, 2013 IL App (1st) 122328-U. We also addressed petitioner's claim that his attorney and the circuit court failed to admonish him pursuant to Supreme Court Rule 402 (Ill. S. Ct. R. 402 (eff. July 1, 2012)). He argued his attorney failed to advise that he could receive a maximum sentence of 30 years' imprisonment and would have to serve 85% of that sentence. We stated that "this new claim was not raised in his filing below, but in any event, it is flatly refuted." We explained:

> "The record clearly indicates the trial court's admonishments as to both the minimum and maximum potential sentence as well as the fact he would have to serve 85% of the sentence. The record also reveals petitioner's response of "Yes" to the trial court's question as to whether petitioner understood those admonishments. As to his attorney's alleged failure, Rule 402 admonishments must be given by the trial court, not counsel. Any claim he has with respect to his attorney's advice should be raised in a postconviction petition." *Id*. ¶ 5.

¶ 14    On November 1, 2013, petitioner filed a *pro se* postconviction petition, arguing that he was denied effective assistance of counsel because his attorney failed to properly advise him of the maximum sentence he could receive, which prevented him from a "full understanding of risks of pleading guilty." He contended, therefore, that he was "unable to make an intelligent choice of whether to accept or take his chances in court." Petitioner also alleged that defense counsel "coerced" him into pleading guilty to "conceal his unprepare[d]ness for trial." He contended that his plea "was induced by apprehension, surprise, hope, [persuasion], fear, ignorance, mistake or promise," and that he "should be allow[ed] to withdraw it and substitute" a not guilty plea. Petitioner noted that the record is "completely void [*sic*] of any evidence of any effort made by counsel and trial court informing petitioner of the minimum and maximum sentence prescribed by law prior to defendant's decision to plea[d] guilty."

¶ 15    Petitioner filed a *pro se* motion to withdraw his postconviction petition on December 13, 2013, stating that his petition had been "compiled by an incompetent individual who has no understanding of legal matters. He has now elicited the assistance of an inmate paralegal," who was going to assist him in preparing an appropriate postconviction petition. The circuit court granted petitioner's motion to withdraw.

¶ 16    On June 9, 2014, petitioner mailed a *pro se* postconviction petition, which the circuit court file-stamped as received on June 20, 2014. The petition alleged that he received ineffective assistance because counsel coerced him to accept a negotiated plea. Counsel persuaded him to enter into a plea agreement "with a sentence of 25-years at 85%." He argued that his attorney failed to examine "new evidence" consisting of transcripts and a compact disc before telling petitioner that he had to decide within five to ten minutes whether to accept a plea offer or the offer would be withdrawn. He contended that counsel prevented him from viewing this evidence. Petitioner

further alleged that counsel did not explain the "full ramifications" before or after his plea. Specifically, petitioner argued he lacked "a clear understanding of the law regarding his opportunity to accept a jury trial or to proceed with a plea." He alleged that counsel coerced him to maintain his plea and admit in open court that he understood the circuit court's admonitions. Defense counsel's "failure to properly communicate" with him or to "clearly explain the ramifications of said decision *** demonstrated his deficient performance."

¶ 17    Petitioner also argued defense counsel was deficient because he believed the hearing on March 14, 2012 concerned a motion to reduce his sentence instead of seeking to preserve his right to appeal. He alleged that counsel was ineffective because, when petitioner was writted in on his *pro se* motion, counsel failed to explain to the circuit court that petitioner's "non-existen[t] understanding of legal matters and his failure to be patient enough to explain to his client the full ramifications that he was facing prior to pre-trial, pre- and post-plea, and at this juncture, pertaining to withdrawal of guilty plea." He again alleged that counsel convinced him to maintain his plea and admit in open court that he understood the consequences.

¶ 18    Petitioner attached to his petition his ARDC filings complaining of defense counsel's alleged incompetence. He stated that counsel assured him that because he did not have a major prior criminal record and "the friendly, work related friendship that he holds with the courtroom judge and the state['s] attorney that [he] would not receive a double digit sentence, if we did not win the case." Counsel went "back inside the courtroom to talk with the judge and to check paperwork to let me know if my sentence was given to me at 50% or 85% and that he would be back to talk with me," but "I never saw or heard from him again." Petitioner alleged that he did not discover he would be serving his sentence at 85% until January 23, 2012, when an inmate calculation form filled out by the Department of Corrections notified him that he would serve his

sentence at 85%. In addition, he attached an affidavit to his petition declaring that the contents of the petition and attached exhibits are "true and accurate to the best of my knowledge and belief" under penalty of perjury.

¶ 19     On July 18, 2014, the circuit court noted that petitioner filed his original postconviction petition in November 2013. Thereafter, this court issued its mandate regarding the original motion to reduce sentence, which somehow caused theJune 2014 postconviction petition to fall off the circuit court's call. The circuit court eventually docketed the June 2014 postconviction petition and considered it to be a second-stage, successive petition, as 90 days had lapsed without a ruling. The court then appointed the public defender's office to represent petitioner.

¶ 20     On July 31, 2018, defense counsel filed a certificate under Supreme Court Rule 651(c) (eff. July 1, 2017), which stated that counsel consulted with petitioner, examined the trial transcripts from the guilty plea proceedings, and prepared a supplemental postconviction petition, which claimed plea counsel rendered ineffective assistance because: (1) petitioner's guilty plea was involuntary; (2) counsel improperly advised him that he would have to serve only 50% of his sentence instead of 85%; (3) counsel told petitioner that he could not pursue a Rule 402 conference; and (4) counsel was inadequately prepared for trial after having learned of taped jail conversations he later admitted not reviewing because of the plea offer, resulting in petitioner being "blindsided" by the prospect of having to go forward with a trial on January 19, 2012. The supplemental petition does not explicitly state that it was filed in lieu of, or merely to supplement, the petitioner's second *pro se* postconviction petition. This leaves open the question as to whether both were pending at the same time. However, the parties refer to the postconviction petition(s) pending after the filing of the supplement in the singular, so we will assume that the matter proceeded on the supplemental postconviction petition.

¶ 21 Petitioner attached his affidavit as one of the exhibits to the supplemental petition. Petitioner stated that during the pendency of the case, he met with plea counsel, who told him his case "was beatable and that [he] should fight it and *** would not receive a double-digit sentence." Petitioner stated that counsel never informed him a Rule 402 conference with the court was a possibility. He stated that on December 9, 2011, "the case was continued to January 19, 2012, for trial. However, my understanding was that the case was not set for trial, but for a status date to set a bench trial date." When petitioner arrived in court on January 19, 2012, counsel told him that the witnesses were ready to go to trial and that "the State was offering 25 years in exchange for a plea of guilty." Petitioner sought to speak to the judge to resolve the matter, but counsel "refused to request a conference with the court, and did not tell us that there was any such thing as a Rule 402 conference." Counsel informed petitioner that "the State had told him that the tapes of [petitioner's] phone calls from jail to [his] family included a tacit admission to [his] participation in the trial," but that petitioner did not admit to the crime. Petitioner stated that on information and belief, trial counsel had not listened to those tapes. Plea counsel told petitioner that the State offered a 23-year sentence in exchange for a guilty plea if completed "that day." Counsel informed petitioner that he could receive a 62-year sentence if he went to trial and was found guilty. Petitioner stated, "Therefore, I took the deal that was offered by the State."

¶ 22 The affidavit also stated that plea counsel told petitioner he would only have to serve 50% of the sentence. Petitioner stated, "While the transcript of my plea hearing says that I would have to serve 85%, [counsel] told me that the judge just had to say that, and I would actually only have to serve 50%. However, when I arrived at Stateville, I learned that I would, in fact, have to serve 85%."

¶ 23    In a second affidavit attached to the supplemental petition, petitioner stated that when he pleaded guilty, "it was my understanding that I would have to serve about 11.5 years (50% of 23 years). If I would have understood that I would have to serve about 19.55 years (85% of 23 years), I would not have accepted the guilty plea." He also stated that he learned from postconviction counsel that the complaining witness had a high level of alcohol consistent with intoxication on the night of the incident and that trial counsel never showed him the complaining witness's hospital records.

¶ 24    On September 26, 2018, the State moved to dismiss the supplemental petition, arguing petitioner had waived all of his ineffective assistance of plea counsel claims by virtue of his guilty plea. The State also argued that the exhibits attached to the petition demonstrated that petitioner verbally acknowledged in open court that he understood the charge and that he would be serving his sentence at 85%. He also acknowledged that he was satisfied with counsel's representation. In addition, the State argued that there was no indication it would have consented to participate in a Rule 402 conference and that petitioner did not demonstrate prejudice. Finally, the State contended that petitioner failed to allege the value of the purported exculpatory evidence necessary to support either prong under *Strickland v. Washington*, 466 U.S. 668 (1984).

¶ 25    Petitioner filed a reply on November 15, 2018, arguing that his guilty plea was taken before the amendment of Rule 402, which subsequently required the State's agreement to hold a Rule 402 conference.

¶ 26    On February 21, 2019, the circuit court heard argument from the parties and granted the State's motion to dismiss. The court explained:

> "The plea at the time was made knowingly and voluntarily. Everything was
>
> spelled out in that plea including the 85 percent sentencing range based on a plea

agreement where the more serious charge of attempted first degree murder was amended and the sentencing range from 31 years at 85 percent to life in prison was reduced to a 23-year sentence at 85 percent. The defendant actually was admonished to that, he said he understood the admonishments, he continued to go forward on the plea.

Within the 30-day time frame he had second thoughts about this plea and the sentencing, that case was motioned back up for him to withdraw his plea. At that time there was a conversation between the presiding judge in the court as well as his attorney and the discussions took place regarding the consequences of withdrawing his plea. At that point in time he reconsidered his desire to withdraw his plea and went forward and withdrew his motion to withdraw his guilty plea.

I find that defendant's post-conviction -- supplemental post-conviction is meritless and I'm going to grant the State's motion to dismiss the Petitioner's post-conviction petition."

¶ 27    Further, the circuit court stated that it had reviewed petitioner's ineffective assistance of counsel claims under *Strickland* and found "there was no probability *** that but for counsel's unprofessional errors the result of the proceedings would have been different. I don't see that. Again, this was a negotiated plea with a reduced sentence from the 31 to life sentence at 85%."

¶ 28    This appeal followed.

¶ 29                                    ANALYSIS

¶ 30    Petitioner argues that the circuit court erred in dismissing his supplemental postconviction petition because he made a substantial showing that plea counsel provided ineffective assistance by erroneously advising him of the percentage of his prison sentence that he had to serve. He

11

contends that counsel incorrectly informed him that he would be eligible for day-for-day credit, and that he relied on that information when he decided to plead guilty. Because he pleaded guilty to aggravated battery with a firearm, he was statutorily barred from receiving such credit and was instead required to serve 85% of his sentence. He contends that even though the circuit court admonished him that he would be required to serve 85% of his sentence, counsel told him that he would only have to serve 50% of the time and that the judge was required to say petitioner would serve 85% of the sentence. He argues that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by counsel's erroneous advice.

¶ 31    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2010)) allows a petitioner to challenge a conviction or sentence for violations of federal or state constitutional rights. *People v. Pendleton*, 223 Ill. 2d 458, 471 (2006). An action for postconviction relief is a collateral proceeding rather than an appeal from the underlying judgment. *People v. Williams*, 186 Ill. 2d 55, 62 (1999). Principles of *res judicata* and waiver will limit the range of issues available to a postconviction petitioner " 'to constitutional matters which have not been, and could not have been, previously adjudicated.' " *People v. Scott*, 194 Ill. 2d 268, 273-74 (2000) (quoting *People v. Winsett*, 153 Ill. 2d 335, 346 (1992)).

¶ 32    Postconviction proceedings are heard in three stages. *People v. Tate*, 2012 IL 112214, ¶ 9. At the first stage, the circuit court independently reviews the petition, taking the allegations as true, and determines whether the petition is frivolous or patently without merit. *Id*. A petition may be summarily dismissed as frivolous or patently without merit only if the petition has no arguable basis either in law or in fact. *Id*. If the court does not summarily dismiss the petition, it advances to the second stage, where counsel may be appointed to an indigent petitioner, and where the State may respond to the petition. *Id*. ¶ 10. At this stage, the court determines whether the petition and

any accompanying documentation make a substantial showing of a constitutional violation. *Id*. If no such showing is made, the petition is dismissed. Otherwise, the petition is advanced to the third stage for an evidentiary hearing. *Id*.

¶ 33    Here, the petition was dismissed at the second stage of proceedings. During the second stage of proceedings, a petitioner bears the burden of making a substantial showing of a constitutional violation. *People v. Domagala*, 2013 IL 113688, ¶ 35. This stage, however, only tests the legal sufficiency of the petition. Unless the allegations in the petition are positively rebutted by the record, they are taken as true, and the question to be resolved at the second stage is whether those allegations establish a constitutional violation. *Id*. "In other words, the 'substantial showing' of a constitutional violation that must be made at the second stage [citation] is a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, *which if proven* at an evidentiary hearing, would entitle petitioner to relief." (Emphasis in original and internal citation omitted.) *Id*. We review the circuit court's dismissal of a postconviction petition at the second stage *de novo*. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006).

¶ 34    First, we address the application of *res judicata* to the successive supplemental petition. Because a postconviction proceeding is not an appeal from the judgment of conviction but a collateral attack on the trial proceedings, issues raised and decided on direct appeal are barred in postconviction proceedings under the doctrine of *res judicata. Tate,* 2012 IL 112214, ¶ 8. Similarly, a "ruling on an initial post-conviction petition has *res judicata* effect with respect to all claims that were raised or could have been raised on the initial petition." *People v. Orange,* 195 Ill. 2d 437, 449 (2001). More broadly, "any issues that have previously been decided by a reviewing court are barred by *res judicata." People v. Harris,* 224 Ill. 2d 115, 124-25 (2007).

¶ 35    On his direct appeal of the denial of his motion to reduce sentence, petitioner argued that his attorney failed to advise him that he could receive a maximum sentence of 30 years' imprisonment and would have to serve 85% of that sentence. We stated in *People v. Jaynes*, 2013 IL App (1st) 122328-U that "this new claim was not raised in his filing below, but in any event, it is flatly refuted." We also found the record clearly indicated the circuit court's admonishments as to both the minimum and maximum potential sentence as well as the fact he would have to serve 85% of the sentence. The record also demonstrated that petitioner twice responded "Yes" to the court's question as to whether he understood those admonishments. In short,this court has already resolved the question of whether petitioner understood he was going to serve his 23-year sentence at 85%. Therefore, it is precluded by the doctrine of *res judicata*. Indeed, petitioner did not formally raise the argument that plea counsel advised him he would only have to serve 50% of the sentence imposed by the court until postconviction counsel filed a successive petition in 2018.

¶ 36    Although the *res judicata* analysis provides a sufficient basis to affirm, we will review petitioner's contentions on the merits for the sake of completeness. Petitioner nevertheless contends that he made a substantial showing that his plea counsel rendered ineffective assistance by erroneously advising him of the percentage of his prison sentence that he had to serve. He contends that if he had known he would have been required to serve 85% of his sentence, he would not have pleaded guilty. Even if we were to relax the doctrine of *res judicata*, petitioner' argument fails.

¶ 37    "It is well established that a voluntary guilty plea waives all non-jurisdictional errors or regularities, including constitutional ones." *People v. Townsell*, 209 Ill. 2d 543, 545 (2004). In *Tollett v. Henderson*, 411 U.S. 258, 267 (1973), the United States Supreme Court explained:

14

"[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."

¶ 38     A defendant's only recourse upon pleading guilty is challenging the voluntariness of the guilty plea and whether it was based on competent advice from counsel. *Id*. "If the defendant's pleas were made in reasonable reliance upon the advice or representation of his attorney, which advice or representation demonstrated incompetence, then it can be said that the defendant's pleas were not voluntary." *People v. Correa*, 108 Ill. 2d 541, 549 (1985). Here, petitioner essentially argues that, as a result of counsel's advice regarding the amount of time to be served, his plea was not entered voluntarily and intelligently.

¶ 39     A challenge to a guilty plea which alleges ineffective assistance of counsel is subject to the two-prong standard set forth in *Strickland*. *People v. Rissley*, 206 Ill. 2d 403, 457 (2003). First, counsel's conduct is deficient under *Strickland* if he failed to ensure that petitioner entered the guilty plea voluntarily and intelligently. *Rissley*, 206 Ill. 2d at 457. Second, to establish prejudice from counsel's deficient performance, petitioner must show that there is a " 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' " *Id.* (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). Unless petitioner can show both deficient performance and prejudice, we cannot conclude that he received ineffective assistance of counsel. *People v. Graham*, 206 Ill. 2d 465, 476 (2003). As such, if a claim of ineffective assistance can be disposed of because petitioner cannot show prejudice, we need not determine whether counsel's performance was deficient. *Id.*

¶ 40    To establish prejudice under these circumstances, petitioner must show that there is a reasonable probability that, absent counsel's error, he would have pleaded not guilty and insisted on going to trial. *People v. Hall*, 217 Ill. 2d 324, 335 (2005). However, a bare allegation that petitioner would have pleaded not guilty and insisted on going to trial if counsel had not been deficient is not enough to establish prejudice. *Id*. Rather, "the defendant's claim must be accompanied by a claim of innocence or the articulation of a plausible defense that could have been raised at trial." *Id.* at 335-36. Under *Hill*, the question of whether counsel's deficient performance caused petitioner to plead guilty depends to a large extent on predicting whether he likely would have been successful at trial. *Id*. at 336; see also *Hill*, 474 U.S. at 59.

¶ 41    Petitioner argues that a recent supreme court decision, *People v. Brown*, 2017 IL 121681, ¶ 46, supports his contention that, when counsel's erroneous advice results in a defendant's misunderstanding of the consequences of pleading guilty, a defendant no longer has to show actual innocence or that he had a plausible defense to the charges. Similar to this case, the petitioner in *Brown* argued he was denied his right to effective assistance of counsel when he entered into a fully negotiated guilty plea agreement in reliance on his plea counsel's advice that he would only have to serve 50% of his 18-year sentence. *Brown*, 2017 IL 121681, ¶ 23. The petitioner alleged he was prejudiced by his counsel's failure to correctly advise him that he was required to serve 85% of his sentence. *Id*. ¶ 46. Indeed, the supreme court found that, under these circumstances, the requirement of a claim of innocence or a plausible defense does not apply to allegations of plea counsel's errors regarding a defendant's understanding of the consequences of entering a guilty plea. *Id*. Rather, to succeed on a claim that he was prejudiced due to counsel's erroneous advice about the consequences of pleading guilty, the defendant must convince the court that a decision to reject the plea would have been rational under the circumstances. *Id*. ¶ 48. Our supreme court

concluded the petitioner's allegation, standing alone, was insufficient to establish prejudice. *Id.* ¶ 49.

¶ 42     The petitioner in *Brown* was charged with (1) being an armed habitual criminal, a Class X felony with a sentencing range of 6 to 30 years' imprisonment, and (2) home invasion, a Class X felony that included a mandatory 15-year firearm enhancement for a total sentencing range of 21 to 45 years' imprisonment. *Id.* The court noted that with the petitioner's significant criminal history, he would have potentially received a sentence on the higher end of those ranges and "there [was] little doubt that [he] would have been convicted of both offenses," because police officers apprehended him inside the victims' home after he pointed a handgun at the officers. *Id.* When the petitioner pleaded guilty, he received only a single Class X felony conviction for armed habitual criminal with a mid-range sentence of 18 years' imprisonment. *Id.* ¶ 50. "Most critically, in exchange for [petitioner's] pleading guilty, the State agreed to nol-pros the home invasion charge." *Id.* Further, nothing in the petitioner's plea colloquy demonstrated that his primary focus when pleading guilty was serving 50% of his sentence. *Id.* ¶ 51 (comparing *Lee v. United States*, 582 U.S. ---, 137 S. Ct. 1958, 1968 (2017) (concluding, in relevant part, that the defendant's responses on deportation consequences during the plea colloquy demonstrated that he placed paramount importance on avoiding deportation)).

¶ 43     Like in *Brown*, we find petitioner in this case failed to establish prejudice. *Id.* ¶ 49. Petitioner was charged with (1) attempt murder, a Class X felony with a sentencing range of 6 to 30 years' imprisonment (720 ILCS 5/8–4(c)(1) (West 2010)); (2) armed robbery with a firearm, a Class X felony with a sentencing range of 6 to 30 years in prison with a 15-year mandatory sentencing enhancement (720 ILCS 5/18-2(a)(2), (b) (West 2010) and 730 ILCS 5/5-4.5-25(a) (West 2010)); (3) aggravated battery with a firearm, a Class X felony with a sentencing range of

6 to 30 years' imprisonment (720 ILCS 5/12-4.2(a)(1), (b) (West 2010) and 730 ILCS 5/5-4.5-25(a) (West 2010)); and (4) aggravated unlawful use of a weapon, a Class 4 felony with a sentencing range of 1 to 3 years for a first-time offense (720 ILCS 5/24-1.6(a)(1), (3)(C), (d)(1), (d)(2) (West 2010)). Although petitioner did not have a significant criminal history, due to the nature of the crime, it is entirely possible he would have received sentences on the higher end of those ranges. Moreover, there is little doubt that he would have been convicted of these offenses – both the complaining witness and a companion present during the incident identified him as the offender and petitioner stipulated to the identifications. In addition, petitioner's DNA was found on evidence recovered from the scene.

¶ 44    When petitioner pleaded guilty, he received only a single Class X felony conviction for aggravated battery with a firearm and was sentenced to 23 years' imprisonment, which was within the 6 to 30-year range for the commission of that crime. In exchange for his guilty plea, the State agreed to remove the remaining charges, which, had he been convicted, could have resulted in the imposition of a life sentence for attempt murder, in addition to sentences for the other charged crimes. See *Brown*, 2017 IL 121681, ¶ 50 (quoting *Lee*, 582 U.S. at ---, 137 S. Ct. at 1966 (explaining that a defendant's decision to plead guilty "involves assessing the respective consequences of a conviction after trial and by plea")).

¶ 45    Further, as in *Brown*, nothing in petitioner's plea colloquy demonstrates that his primary focus when pleading guilty was serving 50% of his sentence. *Id.* ¶ 51. Petitioner *twice* told the circuit court that he understood he would be serving his sentence at 85% following the court's admonishments. This conclusion is bolstered by the fact that petitioner orally moved or filed numerous pleadings after he pleaded guilty and received his sentence, including a March 2012 motion to withdraw guilty plea, a May 2012 motion to reduce sentence, his appeal from the denial

of that motion, and his original November 2013 postconviction petition, none of which included the allegation that counsel misled him on the issue of whether he would serve 50% of his sentence versus the court's admonishment of 85%. Indeed, even petitioner's June 2014 successive postconviction petition did not include this allegation; instead, it was included as part of his ARDC claim that was attached to the petition. Petitioner did not formally allege this claim until it was included in the 2018 successive postconviction petition filed by postconviction counsel. In short, petitioner now complains plea counsel advised him he would only have to serve 50% of his sentence, but did not formally raise that argument until his latest pleading.

¶ 46    In addition, following the circuit court's admonishments, petitioner agreed that no threats or promises induced the guilty plea and that he was pleading guilty of his own free will. He also stated during the plea proceedings that he was satisfied with plea counsel's representation.

¶ 47    Based on these circumstances, we conclude that petitioner has failed to establish the requisite showing of prejudice because he has not shown that a decision to reject his plea bargain would have been rational under the circumstances of this case. Without the requisite substantial showing of a constitutional violation, petitioner's successive postconviction petition is not entitled to an evidentiary hearing. *Brown*, 2017 IL 121681, ¶ 52. We also note the supreme court rejected the assertion that *Lee* lowered the threshold for establishing prejudice when the ineffective assistance claim involves a pleading of guilty. *Id.* ¶ 53. The court stated that instead, "*Lee* expressly reaffirmed '*Strickland's* high bar' and recognized society's strong interest in the finality of convictions based on guilty pleas." *Id.* (quoting *Lee*, 582 U.S. at ---, 137 S. Ct. at 1967). Our holding is consistent with *Brown* and the principles upon which it relied.

¶ 48                                                      CONCLUSION

¶ 49       We affirm the judgment of the circuit court. The allegations in the successive supplemental

postconviction petition are barred by *res judicata* and furthermore failed to establish a substantial

showing of a constitutional violation. The circuit court properly dismissed them at the second stage

without an evidentiary hearing.

¶ 50       Affirmed.